IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PAMELA PYNE, | ) | No. 05-cv-1520 FVS TAG |
| | ) | |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATIONS |
| | ) | ON PLAINTIFF'S APPEAL FROM |
| vs. | ) | ADMINISTRATIVE DECISION |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | / | |

Plaintiff Pamela Pyne ("Claimant" or "Plaintiff") seeks judicial review of an administrative decision denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401 et seq.[2]  Pending before the Court is Claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner"). Claimant filed her complaint on November 26, 2005, and her opening brief on October 16, 2006. (Docs. 1, 23).  The Commissioner filed an opposition to the appeal on November 17, 2006.  (Doc. 24).  Claimant did not file a reply brief.

---

[1]  Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

[2]  Claimant's opening brief indicates that she also sought supplemental security income benefits under Title XVI of the Act, 42 U.S.C. § 1381 et seq., which application the Commissioner denied.  (Doc. 23, pp. 1-2).  Claimant, however, did not apply for Title XVI benefits.  (See Administrative Record ("AR") 78-80).  In addition to Title II benefits, 42 U.S.C. § 401 et seq., Claimant applied for benefits under Part A of Title XVIII of the Act, 42 U.S.C. § 1395(c) et seq.  (Id.).  Title XVIII, Part A,  provides for hospital coverage for those entitled to disability or old-age benefits under the Act.  See 42 U.S.C. § 1395(c) et seq.

1

## JURISDICTION

On March 21, 2003, Claimant filed an application for DIB, alleging an onset date of February 5, 2003.[3] (Administrative Record ("AR") 78-80). The application was denied initially and on reconsideration. (AR 34-37, 41-45, 48-52).

After timely requesting a hearing, Claimant and her attorney appeared telephonically before Administrative Law Judge ("ALJ") Philip E. Moulaison on March 22, 2005. (AR 22, 53, 301-323). On April 27, 2005, the ALJ issued a written decision finding that Claimant was not disabled. (AR 19-31). The Appeals Council denied Claimant's request for review on August 30, 2005. (AR 8-11). The Appeals Council's decision, therefore, became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). The initiation of an appeal in the district court must be commenced within sixty (60) days of the Appeal Council's decision. 42 U.S.C. § 405(g). On November 26, 2005, Claimant timely filed this action. (Doc. 1).

## STATEMENT OF FACTS

The relevant facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs filed by the Claimant and the Commissioner, and will only be summarized here. To the extent necessary, additional facts will be addressed in this Court's analysis.

Claimant was born on October 27, 1945, making her 59 years old at the time of the March 22, 2005, administrative hearing. (AR 305). Claimant testified that she attended school through the twelfth grade. (AR 306). She added that she has a valid driver's license and drives to and from work. (AR 305-06). Claimant further stated that she is 5feet two inches tall and weighs 330 pounds. (AR 305).

Regarding her work, Claimant testified that, for the last five months, she has been working part-time at Wal-Mart as a clerk in the children's department. (AR 306-307, 313). Claimant

---

[3] Claimant previously filed a claim for disability benefits under Title II of the Act in September 2002. (AR 75-77). The Social Security Administration denied the 2002 application after determining that Claimant was gainfully employed at the time. (AR 38-40). Because the Administrative Law Judge amended Claimant's onset date to July 2, 2002 at Claimant's request, Claimant's work history and alleged impairments relating back to that date are addressed as necessary to resolve Claimant's instant appeal. (AR 22, 321).

2

testified that she works four days per week for six hours  daily, and is paid $7.70 per hour.  (AR 306-307).  In addition, she testified that she uses a grocery cart as a supportive device for walking and performing her duties at Wal-Mart, which her employer has seen but had not discussed with her. (AR 312-313).  Claimant testified that she needs no other assistance to perform her job duties, but, when the question was rephrased, reported that the manager of her department (the "manager") performs Claimant's tasks that require stooping and bending because the manager "is aware of the pain and [Claimant's] inabilities to do certain things and she goes ahead and just does it."  (AR 313-314).  Claimant testified that, without the grocery cart and the assistance of the manager, she would not be able to perform the job.  (AR 314-315).  According to Claimant, she has missed a few days of work because of her ailments.  (AR 316).

Claimant also testified that she worked at Wal Mart on a prior occasion for 10 months, and also worked as a motel manager for approximately two months in either 2002 or 2003.  (AR 307, 311-312, 319).  She added that she could not perform the motel manager job because it required her to be on her feet constantly, which caused her leg and foot pain that made it difficult to concentrate on handling money, which was another responsibility of the position.  (AR 312).  Claimant also testified that she has worked in retail at Michael's Crafts and at a bank. (AR 306).

As to her medical problems, Claimant testified that her most disabling impairment is the constant pain she suffers from fibromyalgia and spondylosis, adding that she believes the fibromyalgia causes her knees and ankles to swell and become tender.  (AR 307).  Claimant reported that, when she engages in prolonged activity, she experiences pain in her lower and upper back, shoulders, hands, elbows, knees, ankles, and feet.  (AR 310).  She stated that she also has chronic depression, which causes her to cry, become frustrated, and suffer bad moods.  (AR 307, 310). Claimant testified that she takes extra-strength Tylenol for pain, Prozac for depression, a potassium supplement, xaxatine, and hydrochlorothiazide.  (AR 308, 311).  When Claimant is at home, she sometimes lies down and elevates her legs to alleviate the pain, and remains prone until the pain dissipates.  (AR 315).  Claimant noted that she saw a psychologist for one year before she filed her 2002 disability application, but acknowledged that has not seen a mental health professional since

3

then.  (AR 311).  In addition, Claimant has a history of bilateral carpal tunnel syndrome, for which she underwent surgery in both April and August 2004.  (AR 316).  Claimant testified that the surgeries relieved the numbness in her hands, but that she has to rest her hands for "about 20 minutes to an hour" after she uses them for "a couple of hours."  (AR 316, 317).

With respect to the activities of daily life, Claimant testified that lives by herself in an apartment.  (AR 305, 308).  Claimant stated that she does her own housework, cooks, washes dishes, and can climb stairs.  (AR 308-309).  She testified that she can walk 50 yards before she has to stop and rest, and can stand or sit for approximately 20 minutes before having to reverse positions.  (AR 309).  Claimant added that she can lift and carry 10 pounds, and reach, but not easily.  (Id.).  She testified that she cannot stoop, bend, kneel, or squat.  (Id.).  Claimant testified that she has no loss of feeling or sensation anywhere.  (AR 309, 310). Claimant also reported that she has difficulty with her vision, but it is somewhat corrected by glasses. (AR 310).

Marilyn Kinnier, a vocational expert ("VE"), testified that, based on the Dictionary of Occupational Titles ("DOT"), Claimant's current position as a retail clerk would be classified as a semi-skilled, light exertion job.  (AR 319).  The VE stated that Claimant's earlier job as a motel manager is a skilled, sedentary job, but noted that Claimant had not held that job long enough for it to qualify as past relevant work.  (Id.).  The ALJ questioned whether Claimant's current job, as she described it, constituted competitive employment in the economy and the VE responded that Claimant would have difficulty performing the job if her manager did not perform part of her duties.  (AR 320).  The VE further testified that, taking Claimant's testimony as true, she would not be able to perform the job full-time because she could not lift and stand for six hours in an eight hour day.  (AR 320, 321).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  See 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when it is supported by substantial evidence and is free from legal error.  See Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005)(quotations and citations omitted); Jones v. Heckler, 760 F.2d 993, 995

4

1   (9th Cir. 1985); 42 U.S.C. § 405(g).  Substantial evidence is more than a mere scintilla, Sorenson v.

2   Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  McAllister v.

3   Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Sec'y of Health and Human Serv.,

4   846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind

5   might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971)

6   (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw

7   from the evidence" will also be upheld.  Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On

8   review, the court considers the record as a whole, not just the evidence supporting the decision of the

9   Commissioner.  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (citations omitted).  See Orn

10  v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (summarizing standard of review in social security

11  cases).

12        It is the role of the trier of fact, not the court, to resolve conflicts in evidence.  Richardson,

13  402 U.S. at 400.  If the evidence supports more than one rational interpretation, the court must

14  uphold the decision of the ALJ.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Moreover, if

15  there is substantial evidence to support the administrative findings, or if there is conflicting evidence

16  that would support a finding of either disability or non-disability, the Commissioner's decision is

17  conclusive.  Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision

18  supported by substantial evidence will be set aside if the proper legal standards were not applied in

19  weighing the evidence and making the decision.  Brawner v. Sec'y of Health and Human Serv., 839

20  F.2d 432, 433 (9th Cir. 1987).

21                        **RELEVANT LEGAL FRAMEWORK**

22        The Social Security Act defines "disability" as the "inability to engage in any substantial

23  gainful activity by reason of any medically determinable physical or mental impairment which can be

24  expected to result in death or which has lasted or can be expected to last for a continuous period of

25  not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The Act also provides that a claimant shall

26  be determined to be under a disability only if his impairments are of such severity that claimant is not

27  only unable to do his previous work but cannot, considering his age, education and work experience,

28                                        5

1    engage in any other substantial gainful work that exists in the national economy.  42 U.S.C.

2    § 423(d)(2)(A).

3                              **Sequential Evaluation Process**

4         The Commissioner has established a five-step sequential evaluation process for determining

5    whether a person is disabled.  20 C.F.R. § 404.1520.  Step one determines if the claimant is engaged

6    in substantial gainful activities.  If she is, benefits are denied.  20 C.F.R. § 404.1520(b).  If she is not,

7    the decision maker proceeds to step two, which determines whether claimant has a medically severe

8    impairment or combination of impairments.  20 C.F.R. § 404.1520(c).

9         If the claimant does not have a severe impairment or combination of impairments, the

10   disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step,

11   which compares claimant's impairment with a number of listed impairments acknowledged by the

12   Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(d);

13   20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments,

14   the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively

15   presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the

16   impairment prevents the claimant from doing work she performed in the past.  If the claimant is able

17   to perform her previous work, she is not disabled.  20 C.F.R. § 404.1520(e).  If the claimant cannot

18   perform this work, the fifth and final step in the process determines whether she is able to perform

19   other work in the national economy in view of his age, education and work experience.  20 C.F.R.

20   § 404.1520(f).  See Bowen v. Yuckert, 482 U.S. 137 (1987).

21        The initial burden of proof rests upon a claimant to establish a prima facie case of entitlement

22   to disability benefits.  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971).  In terms of the five-

23   step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the

24   claimant as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to

25   assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ

26   shares the burden at each step."  Tackett v. Apfel, 180 F.3d 1094, 1098 n.3 (9th Cir. 1999) (italics in

27   original).  The initial burden is met once a claimant establishes that a physical or mental impairment

28                                        6

1  prevents her from engaging in her previous occupation.  The burden then shifts to the Commissioner

2  to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant

3  number of jobs exist in the national economy" which claimant can perform.  Kail v. Heckler, 722

4  F.2d 1496, 1498 (9th Cir. 1984).

5  **ADMINISTRATIVE FINDINGS**

6  The ALJ found at step one that Claimant "has engaged in substantial gainful activity since

7  July 2, 2002," because in 2003 she met the work activity and income requirements, and currently met

8  the work activity requirements although she earned slightly below the presumptive income required

9  to meet the requirements for substantial gainful activity ("SGA")."  (AR 23-24, 30).  In rendering his

10 step one finding, ALJ Moulaison considered 20 C.F.R. § 404.1573 and found that Claimant was able

11 to perform her current job satisfactorily. (AR 24).  The ALJ found there was no evidence that

12 Claimant was given more supervision or assistance than is usually given other people doing similar

13 work, and he was not persuaded that Claimant performed her work with any special or extraordinary

14 considerations or accommodations.  (AR 24).  The ALJ noted that Claimant had worked at a bank in

15 2003, and there was no evidence that she received special or extraordinary treatment at Wal-Mart.

16 (Id.).  At step two, the ALJ determined that Claimant suffered from arthritis and obesity, which were

17 severe medically determinable impairments.  (AR 25, 30).  At step three, the ALJ assessed whether

18 Claimant's impairments were among those acknowledged by the Commissioner to be so severe as to

19 preclude substantial gainful activity.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of

20 Impairments).  The ALJ  concluded that Claimant's medically determinable impairments did not

21 meet or equal a listed impairment.  (AR 26, 30).

22 The ALJ then found that Claimant's only limitations were that she could not lift or carry

23 more than 40 pounds at a time and 20 pounds frequently.  (AR 27).  The ALJ found that Claimant

24 had no limitations on her ability to walk, stand, and sit  (AR 27).  The ALJ found that Claimant's

25 testimony regarding her pain and limitations was not fully credible given the lack of medical

26 evidence and in light of her daily activities and the requirements of her current job.  (AR 26-30).

27 The ALJ determined that Claimant retained the residual functional capacity ("RFC") to perform light

28 7

exertional work. (AR 26-30). Accordingly, at step four, the ALJ concluded that Claimant was able to perform her current job, which the VE testified was classified as light, semi-skilled work. (AR 30). At step five, the ALJ found that, pursuant to 20 C.F.R. § 1520(f), Claimant could work as a retail clerk. (AR 30). Based on his findings, the ALJ determined that Claimant was not disabled and, therefore, not entitled to disability benefits under the Act. (AR 30-31).

## ISSUES

Claimant's Opening Brief raised the following issues for consideration:

A. The ALJ erroneously found that Claimant was able to perform her current job without special circumstances

B. The ALJ's determination of Claimant's residual functional capacity ("RFC") is not supported by the record.

C. The ALJ discounted Claimant's testimony without providing adequate reasons.

D. The ALJ failed to further develop the record as to Claimant's depression.

As discussed above, this Court must uphold the Commissioner's determination that claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

**New Evidence**

As an initial matter, Plaintiff includes new evidence in her opening brief that she contends warrants a remand for further administrative proceedings. (Doc. 23, pp. 6-7 & attach.). The new evidence consists of a May 20, 2005 report prepared by rheumatologist Mohammad A. Shakir, M.D., and results from a September 9, 2005 MRI of Claimant's lumbar spine. (Doc. 23, attachs.). Dr. Shakir reported that Claimant suffers from severe fibromyalgia syndrome for which he recommends a daily exercise program and a slightly stronger pain killer (Vicodin) than the Darvocet that had been previously prescribed for her pain. (Doc. 23, attach. 2). The September 2005 MRI revealed degenerative changes to the L3-L5 discs and a bulging L4 disc/osteophyte changes. (Doc. 23, attach. 1).

///

1    Title 42, section 405(g) of the United States Code provides for remand when there is new

2    evidence that is material and good cause exists for the plaintiff's failure to incorporate the evidence

3    in a prior proceeding.  Burton v. Heckler, 724 F.2d 1415, 1417 (9th Cir. 1984).  To meet the

4    materiality requirement, the new evidence must bear directly and substantially on the matter in

5    dispute.  Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001)(quotations and citations omitted).

6    In addition, the plaintiff must show that there is a "reasonable possibility that the new evidence

7    would have changed the outcome of the administrative hearing."  Id.  The good cause requirement is

8    satisfied if new information does not surface until after the Commissioner's final decision, and the

9    plaintiff could not have obtained that evidence at the time of the administrative proceedings.  Booz v.

10    Sec'y of Health and Human Serv., 734 F.2d 1378, 1380 (9th Cir. 1984).

11    In the instant case, Claimant did not obtain or introduce Dr. Shakir's report or the MRI

12    impression at any phase of the administrative proceedings, although both were dated before the

13    Appeals Council ("AC") denied her request for review of the ALJ's decision on September 22, 2005.

14    (AR 8-11).  Claimant offers no reason why she did not submit this evidence to the AC, which is

15    noteworthy given that she provided other supplemental information to the AC before it denied her

16    request for review.  (See Doc. 23, pp. 6-7; AR 292-300).  Nor does Claimant explain why she waited

17    until September 2005 to obtain an MRI of her lumbar spine.  (Doc. 23, pp. 6-7).  The logical

18    explanation is that Claimant neglected to provide the Appeals Council with Dr. Shakir's report and

19    decided that, after losing at the administrative level, the report and the MRI would provide additional

20    evidence to support her appeal in this Court.  The "good cause" requirement would "be meaningless

21    if such circumstances were sufficient to allow introduction of new evidence."  Allen v. Sec'y of

22    Health and Human Serv., 726 F.2d 1470, 1473 (9th Cir. 1984).  Claimant fails to establish good

23    cause for her failure to submit Dr. Shakir's report and the MRI impression in a timely fashion.

24    Since Claimant fails to meet the "good cause" requirement, the question as to whether the

25    new evidence is material is moot.  Burton, 724 F.2d at 1417.  Nonetheless, it is unlikely that either

26    Dr. Shakir's report or the MRI included with Claimant's opening brief would have affected the

27    outcome of the administrative proceedings and, thus, they are not material.  Mayes, 276 F.3d at 463.

28                                                      9

1   Although Dr. Shakir determined that Claimant suffered from fibromyalgia, he said nothing about her

2   ability to work or engage in activities, and instead recommended that she participate in a daily

3   exercise program and take a stronger pain pill twice daily as needed.  (Doc. 23, attach. 2).  The

4   September 2005 MRI reported that Claimant had osteoarthritis in her lower back.  (Doc. 23, attach.

5   1).  The MRI impression is not material because the ALJ found that Claimant suffered from arthritis.

6   (AR 30).  To the extent that the Dr. Shakir's diagnosis of fibromyalgia indicates a new condition and

7   the MRI demonstrates a deterioration of Claimant's arthritis, the evidence may support a new

8   application for benefits, but it does not meet the standard for a new evidence remand.  Ward v.

9   Schweiker, 686 F.2d 762, 764-765 (9th Cir. 1982).

10          Based on the lack of good cause and the finding that the new evidence is not material, the

11   undersigned declines to recommend a remand.

12   **A.      Claimant's Current Job**

13          Claimant asserts that the ALJ erred in finding that, because there was no record evidence that

14   Claimant's manager assisted her with her job-related duties, there were no special circumstances

15   present such that 20 C.F.R. § 404.1573(c) was applicable.  (Doc. 23, p. 5).  Claimant further

16   contends that the ALJ misrepresented the testimony of VE Kinnier in stating that her testimony

17   supported his conclusion that Claimant could perform her current job.  (Id.).  According to Claimant,

18   the VE testified that Claimant would not be able to work in the national economy without the

19   assistance she received from her department manager.  (Id.).  In addition, Claimant avers that, in light

20   of the fact that she received special support at work, her current position did not constitute past

21   relevant work ("PRW"), necessitating a remand to enable the Commissioner to ascertain whether

22   there were jobs that Claimant could perform.  (Id.).

23          In general, PRW is defined as a job that the claimant held long enough to learn how to do it,

24   that consisted of substantial gainful activity ("SGA"), and at which the applicant worked within the

25   15 years before applying for disability benefits.  20 C.F.R. § 404.1560(b)(1)

26          Substantial gainful activity ("SGA") is considered work for which an individual is

27   remunerated that requires significant physical and/or mental activities.  20 C.F.R. §§ 404.1571-

28                                              10

1   404.1572; Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001). To be deemed SGA, the ALJ first

2   considers a claimant's monthly earnings, which are re-calculated annually pursuant to 20 C.F.R.

3   § 404.1574(b), and from which the cost of any special services or devices required to enable the

4   claimant to work are subtracted. 20 C.F.R. § 404.1576. If the claimant earns less than the monthly

5   amount such that he is presumed not to be engaged in SGA, the ALJ must provide other substantial

6   evidence that indicates that the claimant has engaged in SGA. Lewis v. Apfel, 236 F.3d 503, 515

7   (9th Cir. 2001). The ALJ may consider factors that demonstrate (1) whether the nature of the work

8   indicates that the claimant is able to perform at the SGA level; (2) how well the claimant performs

9   the job; (3) whether the work is performed under special conditions; (4) the length of time the

10  claimant has worked; and (5) the amount of time he spends at work. Id. at 515-16; 20 C.F.R.

11  § 404.1573. The claimant's daily activities generally are not considered to be SGA. Lewis, 236 F.3d

12  at 516 (citing 20 C.F.R. § 404.1572(c)).

13      Moreover, the mere fact that a claimant does his job under one of many factors that are

14  deemed "special conditions," is not a definitive basis for finding that the claimant does or does not

15  have the ability to perform work at the SGA level. 20 C.F.R. § 404.1573(c). Some of the special

16  conditions that may be considered are (1) whether the claimant requires and receives assistance

17  performing his work from co-workers; (2) whether the claimant is permitted to take frequent breaks,

18  work irregular hours, or perform less efficiently or productively than his co-workers; and (3) whether

19  the claimant has the job only because of pity, concern for his well-being, or nepotism. (Id.).

20      In the instant case, there are no third-party questionnaires or employment records

21  demonstrating that Claimant received special assistance or worked under special circumstances.

22  (See generally AR). Nor did Claimant's manager or any of her co-workers testify at the hearing or

23  provide statements attesting to an informal arrangement between the manager and Claimant, to

24  which the latter testified. (Id.; see AR 312-15). As noted by the ALJ and discussed above, the

25  record does not establish that Claimant was given more supervision or assistance than other people

26  doing similar work, nor contain any indication that Claimant received any special assistance, worked

27  irregular hours, took frequent rest periods, or was permitted to work at a lower standard of

28

productivity. (AR 24). In addition, it is Claimant, not the ALJ, who misstates the VE's testimony. (Doc. 23, p. 5; see AR 320). As stated above, VE Kinnier provided testimony based on the assumption that Claimant's testimony as to her limitations and assistance at work were true. (AR 320). The VE testified that, if Claimant's testimony was deemed credible, Claimant would not be able to perform her current job without assistance or work on a full-time basis. (Id.). Implicitly, the converse of the VE's testimony is that, if Claimant's testimony was not credible, as the ALJ found in this case, Claimant would be able to work competitively on a full-time basis as a retail clerk.

Because the ALJ found no persuasive evidence that would support Claimant's contention that she worked with any special or extraordinary considerations or accommodations, the ALJ did not err when he found that Claimant could work without assistance and on a full-time basis. 20 C.F.R. § 404.1573; (See generally AR; see AR 24, 30). In addition, Claimant's remaining assertions were based on erroneous facts – specifically that the VE testified that Claimant required special assistance and had limitations that precluded her form working full time. (Doc. 23, p. 5). As discussed above, however, the VE's testimony was based on the assumption that Claimant's testimony was credible. (AR 32). Based on the lack of evidence supporting Claimant's argument, the inference that Claimant could satisfactorily perform her job since she had been doing so for five months, and the ALJ's proper application of the law, it is recommended that the Court uphold the ALJ's findings as to Claimant's first argument. Allen, 749 F.2d at 579; (Doc. 23, p. 5).

**B.  Assessment of Claimant's RFC**

In her brief, Claimant argues that the ALJ improperly found that she retained the RFC to perform light work. (Doc. 23, p. 5). Claimant contends that the ALJ's faulty RFC determination resulted from his reliance on medical records unfavorable to her and a 2003 RFC assessment by an examining consultant, instead of focusing on the record as a whole and according weight to the RFC assessment prepared by her treating source, physician's assistant ("PA") Marilyn Heron, in 2005. (Doc. 23, pp. 6-8). Claimant further contends that the ALJ ignored many of Claimant's ailments, including the combination of her arthritic impairments in conjunction with her obesity, citing SSR 02-1p. (Id.).

12

An RFC is defined as "what an individual can still do despite his or her limitations."  SSR 96-8p.  A claimant's RFC is not a medical issue but an administrative finding, dispositive of the case, which is reserved to the Commissioner, and, by delegation of authority, to the ALJ.  SSR 96-5p.  Accordingly, it is the ALJ who determines the claimant's RFC.  In making this finding, however, the ALJ must consider the whole record and explain how he weighs the medical evidence and testimony.  SSR 96-8p.

Under SSR 02-1p, the Social Security Administration "will find that obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities [and] will also consider the effects of any symptoms (such as pain or fatigue) that could limit functions."  Thus, while the SSR states that the Social Security Administration will evaluate the effects of obesity, it remains Claimant's burden to show that obesity has some effect on her functional capacity.

In this case, the ALJ found that Claimant had the medically determinable severe impairments of obesity and arthritis.  (AR 25).  After finding that Claimant did not meet or equal a listing, the ALJ discussed in detail the administrative record and Claimant's testimony, noting the paucity of evidence including medical records, the daily activities, and Claimant's ability to maintain her job as a retail clerk.  (AR 24-30).  ALJ Moulaison specifically addressed Claimant's depression and her obesity, noting that the latter "likely contributed to the claimant's allegations of pain and functional limitations [but] there is no evidence to show it precluded work activities altogether."  (AR 24-25, 29).

The ALJ also specifically addressed Claimant's depression, noting that the medical records show that Claimant was diagnosed with depression, for which she takes Prozac prescribed by her PA, and also noting that she received no mental health treatment for depression.  (AR 25).  The ALJ determined that Claimant has an affective disorder, and found that her mental impairments "have resulted in only slight restriction of her activities of daily living and slight difficulties in maintaining social functioning."  (AR 25).  The ALJ further noted that there was no evidence that Claimant had

13

1   problems getting along with her coworkers, supervisors, or the general public, and there was no

2   evidence of any complaints or symptoms of depression or any limitations in the medical records.

3   (AR 28).

4        In his discussion of the medical records, the ALJ also observed that Claimant suffered from

5   degenerative changes in her knees, but x-rays of her hip and pelvis were negative.  (AR 27).  He

6   further stated that Claimant took medication for her hypothyroidism, depression, and pain, but noted

7   that, given her complaints of disabling pain, her treatment was minimal.  (AR 27).  The ALJ's

8   findings are supported by the medical records,[4] which reflect that PA Heron injected Claimant twice

9   in October 2004 – once with Toradol and Decadron and once with an unspecified drug –  after she

10  complained of severe pain radiating down her leg and inflammation of her left sacroiliac, but there is

11  no indication that PA Heron prescribed strong painkillers.  (AR 252-257; see generally 240-284).

12  PA Heron's records diagnosed Claimant with degenerative joint disease, hypothyroidism, obesity,

13  and left hip pain due to, inter alia, falls and sciatica.  (See, e.g., AR 268, 270, 280).  She did not

14  request, receive, or review any of Claimant's medical records.  (AR 240-287).

15       In March 2005, PA Heron completed a medical report form and RFC assessment apparently

16  based on Claimant's subjective complaints, laboratory and radiology work she had ordered, and

17  Claimant's self-reported medical history.  (AR 258, 284, 287-91).  PA Heron acknowledged that she

18  did not have Claimant's previous medical records, but reported that Claimant suffered from (1) left

19  SI with radiculopathy; (2) easy fatigue; (3) knee pain; (4) degenerative joint disease; (5) DDD (spinal

20  spondylosis w/accompanying spasms); and (5) pain and decreased strength and agility in her hands.

21  (AR 287).  She added that Claimant's prognosis could not be determined as she had not been fully

22  evaluated by a rheumatologist or a physical therapist.  (Id.).

23

24  _____
        [4]  Additional medical records provided by treating sources include a 2002 MRI of Claimant's left knee and
    2003 x-rays of both knees by Sutter Gould Medical Foundation.  (AR 226-229).  These diagnostic tests indicate
    degenerative changes and mild narrowing of the medial joint compartments.  (Id.).  On August 24, 2002, Dr. David

25  Hilburn's PA examined Claimant and noted concern about her obesity as well as reporting a 2001 diagnosis of
    degenerative joint disease.  (AR 231-232).  Also on August 24, Dr. Hilburn wrote, on the DDS's request for records

26  form, that Claimant had the following limitations:  standing 15 minutes per hour; walking for 15 minutes; and lifting 5
    pounds.  (AR 230).  Dr. Hilburn, however, provided no diagnosis or explanation for his summary limitations.  (AR 230).

27

28                                    14

With respect to Claimant's RFC, PA Heron concluded that Claimant's diagnosed impairments, coupled with asthma and weak and painful ankles, precluded her from sitting more than 3 hours in an 8-hour work day, with a maximum of 0-1 hours at a time; standing more than 2 hours, 0 hours at a time; and walking 2 hours, 1 hour at a time with support. (AR 288). In addition, she concluded that Claimant could occasionally lift and carry a maximum of 10 pounds, and had multiple postural, physical, and environmental restrictions. (AR 288-291).

On July 31, 2003, Dr. Steve McIntire, a Board-certified neurologist, performed a comprehensive examination of Claimant. (AR 234-237). Dr. McIntire reported that Claimant primarily complained about her progressively worsening arthritic joint pain, non-radicular lumbar pain, and occasional swelling of her right ankle and left knee. (AR 234). Dr. McIntire acknowledged that he did not have Claimant's prior radiology films or reports. (Id.). Upon examining Claimant, Dr. McIntire noted, inter alia, that she needed no assistive devices for walking; had no trouble getting on and off the exam table; but exhibited slightly decreased ranges of motion in her lumbar spine, ankles, and knees. (AR 235). He explained that her lumbar spine had abnormal vertebra, but this resulted only in a slight loss of motion as there was no indication of sciatica, tenderness on palpitation, or muscle spasms. (AR 236). As to Claimant's knees, Dr. McIntire again found some significant deformity and slight crepitus with slight loss of range of motion, but no other problems. (Id.). Dr. McIntire found no problems with respect to Claimant's wrists, muscle bulk and tone, motor strength, senses, or deep tendon reflexes. (AR 236-267). He diagnosed slight degenerative osteoarthritis of the lumbar spine, knees, and ankles. (AR 237). Dr. McIntire concluded that Claimant's subjective complaints were not supported by the results of his examination. (Id.). With respect to Claimant's functional limitations, Dr. McIntire stated that the only restriction was that Claimant should not lift or carry more than 20 pounds frequently or 40 pounds occasionally. (Id.).

The DDS non-examining physicians assessed Claimant's RFC based on Dr. McIntire's examination in August, September, October, and December 2003. (AR 189-197). All of the assessments stated that Claimant could return to her previous work, although the December 2003

15

1  assessment limited her to her past sedentary work as a customer service representative or a tow truck

2  dispatcher.  (Id.).

3        The ALJ discounted PA Heron's RFC assessment because a physician's assistant is not an

4  acceptable medical source, and because PA Heron's evaluation was not supported by the medical

5  evidence.  20 C.F.R. § 404.1513(a) (listing acceptable medical sources); (AR 29).  The ALJ noted

6  that PA Heron did not work under the close supervision of an acceptable medical source or as part of

7  an interdisciplinary team such that her assessment should be accorded more weight than that of

8  examining consultant Dr. Steve McIntire.  (AR 29, citing Gomez v. Chater, 74 F.3d 967, 971 (9th

9  Cir. 1996)).  ALJ Moulaison further found that PA Heron imposed restrictions and limitations on

10  Claimant due to ailments, such as asthma and ankle instability, for which there was no medical

11  evidence, and otherwise limited Claimant for no apparent reason other than sympathy for her

12  subjective complaints, as the limitations were not required based on the medical records.  (AR 29).

13  Instead, the ALJ relied on the assessment of examining consultant Dr. McIntire, whose assessment of

14  Claimant's restrictions are consistent with the ability to perform light work.  (AR 29-30); 20 C.F.R.

15  § 404.1567(b) (defining light work).  The ALJ also concluded that an RFC of light work coincided

16  with Claimant's duties at her current job and her daily activities.  (AR 28-29).  In addition, because

17  the opinion of an examining physician is entitled to more weight than that of a non-examining

18  physician, the ALJ properly accepted Dr. McIntire's assessment over those of the DDS physicians.[5]

19  (AR 30); Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); 20 C.F.R. § 404.1527(d); SSR 96-2.

20        Because the ALJ properly considered the medical evidence as a whole, or lack thereof,

21  accorded the most weight to the Dr. McIntire's assessment because he was the only acceptable

22  medical source to examine Claimant, and considered Claimant's work and daily activities in

23  determining her RFC, his conclusion that she retained the RFC to perform light work is based on the

24  application of the appropriate law and the substantial record evidence.

25  
        [5]  The opinion of a claimant's treating physician generally would be accorded the most weight, and an
26  examining consultant's opinion would receive more deference than a non-examining doctor.  Because, however, there is
   no treating physician in the instant case, the examining consultant's opinion is accorded the most weight.  See Orn v.
27  Astrue, 495 F.3d 625, 631 (9th Cir. 2007); 20 C.F.R. § 303.1527(d); SSR 96-2.

28                                              16

1    **C.    Claimant's Testimony**

2         Closely related to the above discussion, Claimant asserts that the ALJ did not provide

3    specific and convincing reasons for finding her pain testimony not credible, especially in light of the

4    record evidence.  (Doc. 23, pp. 8-9).  In support of the veracity of her testimony, Claimant notes that

5    she underwent more aggressive treatment than the ALJ reported, including surgery and injections of

6    toradol.  (Id. at 9).  Claimant further contends that her motivation to work, despite her pain, is

7    additional evidence of her credibility.  (Id.).

8         A two step analysis applies at the administrative level when considering a claimant's

9    subjective credibility.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the claimant

10   must produce objective medical evidence of an impairment and show that the impairment could

11   reasonably be expected to produce some degree of symptom.  Id. at 1281-1282.  If claimant satisfies

12   this test – and if there is no evidence of malingering – the ALJ can reject the claimant's testimony

13   about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for

14   doing so."  Id. at 1281.  Such specificity is crucial so as to enable effective judicial review.  See

15   Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001)("The lack of specific, clear, and

16   convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to

17   determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (the

18   ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent

19   reviewers the weight the adjudicator gave to the individual's statements and reasons for that

20   weight").  Thus, an ALJ's decision "must identify what testimony is not credible and what evidence

21   undermines the claimant's complaints."  Lester v. Chater, 81 F.3d 821, 835 (9th Cir. 1995).  Grounds

22   for an adverse credibility finding include, but are not limited to, inconsistencies either in the

23   claimant's testimony or between the claimant's testimony and conduct, the claimant's daily activities

24   and work record, the location, duration, frequency, and intensity of the claimant's pain or other

25   symptoms, testimony from physicians and third parties concerning the nature, severity, and effect of

26   the symptoms of which the claimant complains, and the lack of adequate explanation for a claimant's

27   failure to follow a prescribed course of treatment.  See Light v. Social Sec. Admin., 119 F.3d 789,

28                                                    17

1   792 (9th Cir. 1997); SSR 96-7p.

2        The Ninth Circuit has held that, when a claimant testifies about disabling pain, but does not

3   seek treatment for it or comply with prescribed treatment, the ALJ may find that the claimant's pain

4   testimony is "unjustified or exaggerated." Orn, 495 F.3d at 638.  This Court further notes that there

5   are any number of clear and specific findings that the ALJ can make, many of which are identified in

6   SSR 96-7p.  Such findings include: (1) whether "the level or frequency of treatment is inconsistent

7   with the level of complaints," SSR 96-7p (Medical Treatment History), (2) whether "the medical

8   reports or records show that the individual is not following the treatment as prescribed and there are

9   no good reasons for this failure," id., and (3) the consistency of statements made by the claimant to

10   physicians, to those deciding benefits under other programs (e.g., workers' compensation), and to the

11   Social Security Administration itself, while recognizing that "[s]ymptoms may vary in their intensity,

12   persistence, and functional effects, or may worsen or improve with time, and [that] this may explain

13   why the individual does not always allege the same intensity, persistence, or functional effects of his

14   or her symptoms."  Id.  Each of these and other potential findings are fact-specific, precisely the

15   province of the ALJ.  Some other ALJ findings, as identified in reported cases, are illustrative and

16   demonstrate the many ways in which ALJs can draw credibility inferences from the facts at hand: (1)

17   an ALJ found that claimant's testimony that her neck pain was so severe that she had to cut her long

18   hair for relief was contradicted by the fact that her hair reached well below her shoulders at the

19   administrative hearing, Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003), (2) the same ALJ

20   found that claimant's testimony that she had never undergone physical therapy was contradicted by

21   medical records indicating that she had, in fact, attempted such treatments, id., (3) an ALJ found that

22   claimant's "'extremely poor work history'" and low "'propensity to work'" negatively affected her

23   credibility regarding her assertion that her disability precluded work,  Thomas v. Barnhart, 278 F.3d

24   947, 959 (9th Cir. 2002), (4) the same ALJ found that claimant had not been a reliable historian,

25   "'presenting conflicting information about her drug and alcohol usage,'" id., (5) the same ALJ also

26   found that claimant's efforts to impede accurate testing of her limitations argued strongly against her

27   credibility, (6) an ALJ found that claimant had been uncooperative during consultative examinations,

28                                              18

and illustrated that finding with a specific statement by a physician regarding claimant's "'poor effort,'" Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001), (7) the same ALJ found that claimant tended to exaggerate, and illustrated that finding with a specific comment by a physician that claimant was deficient during cognitive testing but "'much better'" when giving reasons for her inability to work, id., (8) an ALJ found that claimant's pain assertions were inconsistent with the opinion of his own treating physician, who was "'quite emphatic in his report about the lack of objective evidence to support claimant's complaints of pain and weakness,'" Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995), (9) an ALJ found that claimant's limited and recent use of non-narcotic pain medications were inconsistent with her claim of extreme pain, Ruiz v. Apfel, 24 F. Supp. 2d 1045, 1048-1049 (C.D. Cal. 1998), and (10) the same ALJ found that claimant's conservative treatment regimen was inconsistent with her complaints of extreme pain, id. at 1049. Light v. Social Security Administration provides a brief synopsis of factors that can form a basis for ALJ credibility findings, including consideration of a claimant's reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. See Light, 119 F.3d at 792

In finding Claimant's testimony not wholly credible, the ALJ explained that the medical records do not support her allegations of disabling pain and limitations. (AR 28). He specifically noted that the records indicate that Claimant reported no continued pain after her carpal tunnel surgery, did not complain of constant pain in general, and there was no evidence that her alleged depression limited her in any way. (Id.). The ALJ added that Claimant did not complain of, nor did the examining consultant find, that Claimant suffered pain or tenderness. (Id.). He also noted the lack of evidence indicating that she had fibromyalgia.[6] (Id.). Essentially, the ALJ did not find

---

[6] Although Claimant may argue that the rheumatologist's report diagnosing her with fibromyalgia would have changed the ALJ's assessment of her credibility and, therefore, his overall decision, given his additional findings that her activities and work rendered her testimony of disabling pain not credible, it is not reasonable to assume that the diagnosis would have altered the administrative decision. Booz v. Secretary of Health and Human Serv., 734 F.2d 1378, 1380-1381 (9th Cir.1984) (there must be a reasonable possibility that the new evidence would have changed the outcome

1   evidence of an impairment that could or did cause the pain to which Claimant testified.  (Id.)  The

2   ALJ further observed that Claimant was able to work 24 hours per week without any obvious

3   assistance.  (Id.).   He also explained that she was able to engage in various activities, including

4   cooking, shopping, cleaning her house, and driving, which were inconsistent with her complaints of

5   constant, disabling pain.  (Id.).

6          Based on the foregoing, the ALJ satisfied the two-steps set forth in Smolen by finding that

7   both the medical evidence and Claimant's ability to work and perform various activities belied her

8   testimony.  80 F.3d at 1281; Light, 119 F.3d at 792; SSR 96-7p.

9   **D.      Failure to Develop the Record**

10          Claimant asserts that ALJ Moulaison failed in his duty to further develop the record as to her

11   depression.  (Doc. 23, p. 7).  Claimant contends that psychiatric consultations would provide

12   evidence that she suffered a mental health impairment that, in combination with her physical

13   ailments, would have led to a different RFC assessment.  (Id. at 7).

14          In a Social Security case, an ALJ is obligated to fully and fairly develop the record even if the

15   claimant is represented by counsel.  Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003).  There is

16   a heightened duty where the claimant is suffering from a mental condition because mental claimants

17   may not be able to protect themselves from loss of benefits by producing evidence.  DeLorme v.

18   Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  An ALJ's duty to develop the record is further triggered

19   when there is ambiguous evidence or when "the record is inadequate to allow for proper evaluation

20   of the evidence."  Mayes v. Massanari, 276 F.3d 453, 459-460 (9th Cir. 2001); Tonapetyan v. Halter,

21   242 F.3d 1144, 1150 (9th Cir. 2001).  This duty may require that the ALJ obtain additional

22   information by, inter alia, contacting treating physicians, scheduling consultative examinations, or

23   calling a medical expert.  20 C.F.R. § 404.1512(d)-(f).

24          In the instant case, the ALJ was not obligated to further develop the record with respect to

25   Claimant's depression given that she responded well to Prozac, which she stated that her treating

26

27   if it had been before the Secretary).

28                                              20

sources prescribed, and she had not seen a therapist since 1991 – well before the July 2002 onset

date.  (AR 124, 129, 131, 134, 187).  Moreover, Claimant reported that she stopped taking Prozac in

approximately November 2004.  (AR 270).  In addition, there were no indications that her depression

interfered with her ability to work or engage in daily activities, although Claimant testified that she

cried, became frustrated, and had bad moods due to her depression.  (AR 187, 306-312).

Nonetheless, the ALJ considered it, pursuant to Listing 12.04, and concluded that Claimant had only

slight limitations due to her depression given her ability to work in a job that involved public contact,

the lack of evidence indicating that she did not get along with people, and her daily activities.  (AR

25).  The ALJ further noted that Claimant had not complained of a lack of concentration or other

symptoms to her treating sources.  (AR 26).  Accordingly, as discussed above, the ALJ found that

Claimant had an affective disorder that caused her slight limitations in her daily activities, ability to

concentrate, and social functioning.  (Id.).

Based on the forgoing, including the scant mention of Claimant's depression, the failure of

her treating sources to recommend that she see a therapist, and the lack of any indication that her

depression contributed to her alleged disability, the Court concludes that the ALJ did not err in

failing to develop the record further as to Claimant's depression.  Mayes, 276 F.3d at 459-460.

[                               **CONCLUSIONS AND RECOMMENDATIONS**

For the reasons discussed above, the Court finds no error in the ALJ's analysis and his

determination that Claimant is not disabled.  The Court further finds that the ALJ's decision is

supported by substantial evidence in the record as a whole and based on proper legal standards.

Accordingly, the Court RECOMMENDS:

    1.    That Claimant's Social Security complaint be DENIED; and

    2.    That Judgment be ENTERED for Defendant Michael J. Astrue and against Claimant

Pamela S. Pyne.

These Findings and Recommendation are submitted to the District Judge assigned to this

action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304.  No later than ten

(10) court days after service of these Findings and Recommendations, any party may file written

objections to the Findings and Recommendations with the Court and serve a copy on all parties and the Magistrate Judge and otherwise in compliance with this Court's Local Rule 72-304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Responses to objections shall be filed and served no later than ten (10) <u>court</u> days after service of the objections and otherwise in compliance with this Court's Local Rule 72-304(d).  A copy of the responses shall be served on the Magistrate Judge.  The District Judge will review the Findings and Recommendations, pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   **January 4, 2008**                                         **/s/ Theresa A. Goldner**
                                                                                        UNITED STATES MAGISTRATE JUDGE

22